Get formal here. Very well. Okay. And I will get right to it, Your Honors. As I'm sure Your Honors are aware, the issue in this case is the existence of exigent circumstances in securing a residence while a search warrant was being procured. Was searching done before the search warrant is issued? Because I know they get the Correct. Are they searching between 2.30 and 9 o'clock? No. The only thing that is done is all three residents are put, you know, are sitting in the living room, and they are secured there. No searching is going on. They can use the restroom, et cetera, et cetera. But no searching is done. Use the restroom grudgingly? That I don't know. I hope not, but I don't. Off the top of my head, I can't recall that specific, Your Honors. Well, there are statements in the record to that effect. But there was no searching. There's nothing in the record that I'm aware of, certainly, that any searching is going on. And if there's a dispute about that question, I guess we'll hear about it. Okay. Exactly. And basically, I just wanted to make two points here this morning. As we've argued, simply under a strict Fourth Amendment analysis, without even getting into the 1983 analysis, our first argument is that there were exigent circumstances here, owing to the nature of this particular narcotics investigation. But even if that were not the case, the question then becomes, as the recent Berceau case that I cited in the 28J letter said, was the law clear, was there clear law that would apply to a situation like this, that would put these officers on notice that securing this residence was unreasonable? And we submit that, no, the law was not clear. In fact, the state court judge in the underlying criminal proceeding found exigent circumstances. We are not arguing that that's. Do we have a copy in the record of the proceedings in front of the state court judge, either the transcript or the state court judge's order and so on? I looked and all I could find was a sort of an excerpt that's quoted in some papers rather than the full extent. Rather than the actual document. Or whatever the document might be, whether it's a written document, whether it's a transcript of the hearing, you know, whatever it is, I looked for the whole thing and I couldn't find it. And I thought that we had the transcript in there. Well, if it is, would you put my nose in it? Pardon me? If it is in there in the excerpts, if you would find it for me, I'd appreciate it. Maybe between your argument and my argument. No, I understand. What my concern is, is it may not be in the excerpts. But I will double-check that. I will have an answer for you one way or the other in terms of where it's in the excerpt. Because it is important to me to figure out, okay, well, if a state superior court judge thinks it's okay, well, that obviously is a point in your favor. But I sure would like to know precisely on what ground the state court judge thought it was okay. I understand. And we did quote what he had to say in the brief. And why would you put that in the excerpt? And I'm sorry. I thought it was. It might be, but I wasn't able to find it. And that concerns me, believe me. So I will get an answer to that question. Well, you may be able to get the answer between the time you sit down and stand back up again. Exactly. And the point of it, because certainly from an authentication point of view, that's key here. It's not that what the state court judge has found binds this court. Did you make this argument about the state court judge to the district court judge? Yes. The reason I ask that is the district court judge in his quite lengthy order does not mention this. It's the only thing missing. And I don't know why, because otherwise it's a very comprehensive opinion. So when you read it, why didn't you go before the district court judge and say, oh, you know, I'd like to call the court's attention to the fact that this, what I think is kind of vital information is left out. A logical question. I do not know whether that effort was made. But it is odd in Judge Wilson's otherwise comprehensive opinion that that sort of key fact is missing. Okay. Has the superior court decision been appealed? Is it on appeal? That I do not know. I do not know what the status of the underlying criminal. There was a conviction. Was the conviction following a jury trial? And that I don't know. You don't know whether it was a plea? I think I do. I think it was a plea. It may have been. In which case, no, it's not a plea. Obviously, it wouldn't be an appeal at that point. The bottom line point is if the superior court judge so found, how can it be unreasonable for officers to do that? But you say, I want to know what the superior court judge found and on what ground. For example, you just told me that no searching occurred until after the search warrant. So the argument in front of him might simply have been, was it a valid search warrant, rather than the question about the entry beforehand. I mean, if all they're doing between 2.30 in the morning and 9 o'clock is securing the premises and they've done no searching, the suppression motion might simply have been on the validity of the warrant. And I understand Your Honor's concerns. So I will get that answer in just a moment. Okay. Well, and Judge Wilson, I've known him for a long, long time. He was one of the top prosecutors in the U.S. Attorney's Office. Indeed, he was. And so anyway, you've got a little bit of an uphill struggle, but go ahead. Hopefully I can answer the panel's concerns here. So let me sit down now, hear from my adversary, and hopefully I'll have some answers for you in just a minute. Thanks. I believe I can throw some light on your question, Your Honor. The record before Judge Wilson, which is basically in the excerpts of record, did not contain the transcript of the state court proceedings. All that was placed in the court was the quoted extract. In fact, it was the totality, basically, of Judge Chidsey's opinion, which was made at a preliminary hearing. And, Your Honors, I would respectfully submit, as I've done in my briefs, that basically, whether or not Judge Chidsey thought there were exigent circumstances, and I'm not sure that it's clear, even from the statement that's quoted by the appellant that he did, because he doesn't refer to exigent circumstances at all, it should be noted. He refers to the totality of the circumstances. And he talks about what the police believed. Now the fact is, Your Honor, that that is not sufficient under determined Fourth Amendment law. The police have to have specific, articulable facts to justify their intrusion into a private home. We're talking about a citizen's home for which there may have been probable cause. And Judge Wilson was prepared to say that he believed there was probable cause. But where were the exigent circumstances, Your Honors? Exigent why? Three hours, nearly three hours after the arrest of Mr. Filinski, who they found on his cell phone on the 405 freeway, no more than 15 minutes from this house that was raided at 2.55 a.m., all that was there was hidden on a cell phone. They didn't move immediately to secure that house. They took three hours to travel a short distance to secure it. And even then, Your Honors, after they had secured it by battering ram, breaking in and waking up everybody, they waited until 9.08 to get a search warrant. Now, the record is clear, Your Honor, that there was already a search warrant in preparation. It was updated daily according to the sworn testimony. Well, I have to say that that last argument doesn't do much for me. That is to say, if they've secured the premises, that they should wait until the judge comes into the office instead of calling the judge. I mean, I don't think I'd like to call a judge at 3 in the morning. Once they've secured the premises, the exigent circumstances have been taken care of, and so they can wait until 9 o'clock. So, I mean, that's neither here nor there for me. Fine, Your Honor. Well, let's look at the circumstances that led up to it. Well, let me ask you this. This is a Superior Court matter, right? Superior Court, Los Alamos County? Yes, Your Honor. All right. They've got 500 judges. Now, I guess it'd be that they have a judge on duty. That would, Your Honor. Yeah, that you could get a warrant 24 hours. Yes, Your Honor. Get a telephonic warrant. Yes. And none of that was done. I would agree, Your Honor. And not only could they have gotten it, they could have gotten it in much less than the 3 hours they took to finally go over to those premises and batter the door down to secure it. Your Honor, it was just, let's see what we can do. It's convenient for us to do it. That's all it is. There were no specific articulable exigent circumstances here. Counsel, let's concede that there's a Fourth Amendment violation here. What is the strongest case that you've got that these officers should have been aware of that would put them on notice that they were violating Fourth Amendment rights of the residents, of the Shotland residents? I think, Your Honor, it's basic Fourth Amendment law that a citizen's home can only be invaded if the police have a warrant absent exigent circumstances. But they have to be able to know what constitutes exigent circumstances. They have to be able to know where the line is because the qualified immunity cases tell us that qualified immunity protects everybody except for those who are really stupid and those who have evil in their hearts. We're going to have to have somebody here who needs to know, obviously, that they have crossed the line. So what's the case that establishes the line that would tell these officers this is the violation of the Fourth Amendment? Well, Your Honor, I think that opposing counsel has quoted one Brousseau. This was a situation in which the police officer had to make a split-second judgment. Was the fleeing felon a danger to others or not? She determined that he was. If these officers had read Brousseau, would they know then that they couldn't go into the Shotland residents? Well, Your Honor, in this case, the only claim that they had for immediate entry was the fear or the apprehension that evidence would be destroyed. They get to the premises. There's no evidence of anybody even being up, let alone anybody destroying evidence. You know, the classic case, knock on the door, there's the flushing toilet or the footsteps in the corridor or people yelling out, it's the police. None of that occurred. Nothing. There's no evidence of that at all. And indeed, what is clear is that when they went into the premises, everybody was sound asleep. Of course, they didn't know that until after they got inside. No, but there was no evidence. Answering Judge Barbee's question, Your Honor, was that clearly they have to be outside with some specific articulable evidence, we would submit, that something nefarious was going on inside. And the other issue I would submit, Your Honor. Well, that's what you usually hear, is that there are footsteps, flushing of toilets, and shouting in the house. Yeah. Was there an officer posted at the back door of the home, of the residence? Prior to it being secured, you mean, Your Honor? Yeah. There's no evidence of that, no. The police simply got there three hours after arresting Filinski, knocked on the door, and they say in the record they waited. Their report is unclear as to how long they waited. They then battered the door down. So I want to come back to my question, counsel. These officers, being diligent officers, being responsible for having read the Brousseau case, having read Brousseau, should have known at that instant that they were violating the Fourth Amendment. Well, I cited that as one example, Your Honor. Okay. I'm asking for your best cases because I'm wanting to know what is it, what case is it that should have put them on notice. They went into that door. They should have said, something in their head should have said, stop, we're violating the Constitution here and we're going to be held accountable in civil court for what we're doing. Well, Your Honor, with respect, I'm not quite sure that that is what the police should be asking themselves. What they should be asking themselves is, are there exigent circumstances here which justify us in the middle of the night battering a door down? Yes. But exigent circumstances turns out to be a term of art. And so we have to know what defines what are exigent circumstances. Well, Your Honor. That's not a constitutional term. It's a term that comes out of the cases. Sure. But the cases indicate that there are several categories. And the only one that we're dealing with here is the fear, the concern that evidence is in imminent danger of being destroyed. That's all they're proceeding on here. So if they were so concerned, why did they take three hours to travel the short distance to get to the house? They should have hightailed it over there and been there within minutes. That's a test. They should have known that after three hours, as Judge Wilson says in his opinion, evidence could have long been destroyed, assuming that there had been contact with the person that they arrested. Do we know what kind of evidence they were looking for in the house? They were looking for drug evidence, Your Honor. Okay. But are they looking for drugs or are they looking for drug evidence? They were looking for drugs specifically, MDMA tablets. Okay. Are they looking for anything else? Well, according to the police evidence, they had had a wide-ranging investigation, but it appeared to be drugs. There was evidence of marijuana having been involved. Judge Wilson refers a couple of times to the fact that in, I believe it's Officer Vukitic's statement, that oftentimes people at the top of these organizations do not have drugs on the premises. Right. But then Officer Vukitic in the same statement says that there are other things that are often found at the top guy in the organization, and he names off a number of things. We're looking for telephone logs. We're looking for telephone bills that would contain evidence of calls that were made. We may be looking for computer evidence. Were the officers looking for anything like that or might they have been looking for anything like that? There's no evidence to indicate what they were looking for, Your Honor. Okay. They're talking about evidence per se, and with respect to Officer Vukitic's declaration, Your Honor, I think that's a generic declaration. But there are things that they might have been looking for that couldn't feasibly be flushed down a toilet. That's possible, Your Honor. I suppose if they were looking for a computer, obviously that couldn't be flushed down the toilet. I suppose it could have been wrecked and the hard drive taken out and destroyed, but yes, it couldn't be flushed down the toilet. That's true. But the point is, Your Honor, when they arrived there three hours after the arrest of Mr. Felinski, when they arrived there, they had no evidence from their surveillance of the property that anything untoward was taking place inside. They knocked on the door. No. Is this a freestanding house? It's not an apartment. There were other apartments involved, but this is a freestanding house. How big is the house? How big is the house, Your Honor? I don't know. Any idea how many square feet? I can only testify as to my own knowledge, Your Honor. I don't think there's anything in the record to indicate that. I'm just curious as to whether they would be able to see, for example, whether a light was on in every room in the house or whether there's – did the house have a basement or an attic? No, it did not. A single-story house, Your Honor, on a small lot in Sherman Oaks. They entered, actually, through the side door, according to their evidence. So what street were they on again? It was on Clark, I think, Your Honor. Clark, yeah. Clark, where was it? Clark near Victory? Not Victory, Ventura? Fairly close, Your Honor. Yeah. Okay. Well, I mean, I think that the discussion on both sides is obviously focused on what we would see to be the two issues here. You know, were there accident circumstances? We say no. And even assuming there were none, did the police have a good-faith belief that there were? And again, we say no for the reasons that I've attempted to explain in the briefs in here. If there are none. Thank you. Thank you, Your Honor. To answer Judge Fletcher's question, that particular portion of the transcript itself is not in the excerpts of record, as you had surmised. We have other excerpts from that preliminary hearing. Regrettably, the one that is quoted that is particular to exigent circumstances, that portion of it is not there. Pages 65 through 71 of the excerpts have other portions of that transcript. However, the one that was quoted in the motion for summary judgment did not. I will say there was never an objection lodged in opposing the summary judgment motion that somehow that was not an accurate quotation. Well, but you're taking the appeal, right? Correct. And it's your job to provide this information to us. I understand. It appears, Your Honor, that the actual transcript was not an exhibit to the motion for summary judgment. Because I also checked the docket, because what I was trying to say is, did I make a mistake with the excerpts? Was there a separate exhibit in addition to the motion? According to the docket, there was not. But it's you who's making the argument that one powerful point on your side is that a superior court judge looking at these facts found exigent circumstances. And the only thing I've got to support that is excerpted in the points and authorities on ER 12, but it's excerpted. And we all know that it's better to read the whole thing than to read the excerpts selected by someone for his or her own purposes. I in no way suggest that this is an inaccurate quotation, but I would certainly like the context. And I understand, Your Honor, that's a more than reasonable request. And that's all that I have. That is all that I have. And is that all that's in the record, not just in the ER, but that's all that's in the record? And that is what I fear. I would like to confirm that. If it was in the record and I made a mistake somehow by not putting it in the excerpts, and that's my fault, I would like to remedy that. Well, we can get our hands on the record. So that may be my fault. If so, I apologize, because Your Honor's concern isn't absolutely valid. Well, if it's in the record, we can do that. If it's in the excerpts, what happens is one judge gets the full record and among the three of us, two of the others get the excerpts only. And then later on, we can kind of exchange and pull out of the record and so on. Sure. I understand. So you think it is in the record or you're not sure it's in the record? I am not sure. I cannot stand here and say one way or the other whether the copy of that transcript is in the record. I do not know. A transcript and all other relevant documents that would let us know precisely what was in the mind of that superior court judge. Absolutely. Okay. Absolutely. No, I agree. The other point I wanted to make, which is obviously the point that Judge Vivey was making, is that there is no case. No case has been cited to put these two officers on notice that what they were doing was unreasonable. But there are a lot of cases about what constitute exigent circumstances. Sure. But nothing with a specific. All right. Come on. Now, you know, it's in the middle of the night. Three hours go by. They're out there with a battering ram. You know, maybe, you know, maybe they're just stupid. But, you know, I mean, point to me, what was the exigent circumstance here? The exigent circumstance was one of the lower level people in this drug investigation is arrested. And when he is arrested, he tells the arresting officer, I told the next level up. I told the guy the next level up in this. That's Gorham. That's Gorham. That's correct. Yeah. That's correct. Yeah. And what the officers feared was that it got that far, it's going to quickly go to the top. That's the exigent. Okay. So they were a few minutes away from the top. Why don't they just go right there? Why don't you go right there? There's an exigent circumstance. If they're worried about this guy, Shotland, and he's the big dealer, and they do insulate themselves, we know that. They're just a few minutes away. Boom, you're right there. It's a house. You know, someone goes around the back. You know, you knock on the door. No one answers. Boom, you go in. You know, about three hours they wait, you know. And if they needed a search warrant, they can get a telephonic search warrant. Isn't that right? There are certain circumstances. Of course you can. Under which? Obviously. No, there's no special circumstances to get a telephonic search warrant. You know, you get one. You know, and there are people on duty, judges on duty. And if there's a real crisis and they really want a search warrant and there are no exigent circumstances, well, of course they wouldn't get one because you can't get a warrant to come in at night, can you? You got to wait until whatever, 7 o'clock in the morning before you can make an entry. Isn't that right? Right. I believe. And don't you think these police officers knew that? That, you know, it's at night and you just don't go around battering people's doors down unless you've really got exigent circumstances. And so how can you have them here? I mean, you got a three-hour delay. I don't know what they were doing. They were right close by. You know, Judge Wilson's a very, very hard-nosed prosecutor. And, I mean, you know, if he made a ruling like this, believe me. No. Enough said. Yeah. No, I understand where Your Honor is coming from. It seems to me when you've got the circumstances here. Tell me what they are. What's the exigent circumstance? The exigent circumstance is the need to secure this residence. Well, three hours went by. Three hours went by. You know, if you're going to flush a toilet, if it, you know, gets up to the top, you know, you want to get there right away and secure the residence. It was at night. Knock on the door. No one answers. Boom, you go in. Did the officers know that Shotland was at home? They believed he was at home, yes. Had the officers, I mean, I guess I shouldn't say it this way because it's going to make it sound like a trick question. Judge Wilson says that during the entire period of surveillance, the officers never saw packages that looked as though they might contain drugs go into or come out of that house. Whereas they'd seen cardboard boxes and various things, towels, wrapping things, elsewhere. But they'd never seen drugs go in or out of that house. I believe that is correct. So the suspicion that there are going to be drugs in that house and that the drugs are going to be flushed down the toilet, according to Judge Wilson, says, well, there might have been, but they never saw any. Whereas they did see them elsewhere. That doesn't work. I mean, I'm afraid that's a point against you. The observations that the officers made, that's true. The times that they saw those things pass, that's true. If you go back in time, it is the logical inference that's where they came from. But in terms of what they actually saw, that's correct, Your Honor. Yes. Short answer is they never saw any drugs go in or out of that house. Well, there is one report, which is on page 44 of the excerpts of record, that the investigating officers observed Oresti, Malkoon, and Shotland engage in what appeared to be a narcotics transaction, and that was at the Clark Street residence. Right. Or right in back. Right. But there's no detail, and Judge Wilson comments on that. He acknowledges that. But then he says, look, we have no idea what this was. I mean, there's no further detail as to what appeared to be a narcotics transaction was. That's correct. There is no further detail on that, but that's the closest you get to, and I thought that was outside of the home where that was concerned. Then he already answered your question, Judge Fletcher, as far as the home is concerned. I believe that's true. I believe that's true. Okay. Counsel, one last question. The same question I asked Mr. Blaxland. Yes. What's the best case that you can give me for your officers that would demonstrate they should not have known they were violating the I guess that's an interesting take on the same question. My understanding is it's not the officer's obligation. Maybe they graduated from one of L.A. unified schools and never got to it, you know, and I'm a product of the L.A. unified school district. I understand. Maybe they never heard of the Constitution. You know, one time I had a D.A. from Orange County argue to me that the Fourth Amendment didn't apply to Orange County. You know, I mean, he was serious about it, too. Oh, I have no doubt he was serious, Your Honor. Yeah. So, I don't know. And, Judge Feige, to directly answer your question, I'm not aware of a case that's close enough as far as exigent circumstances to cite it. My understanding is You don't have anything, then, that would provide a defense to your client. Nothing that is close enough factually to be of any aid to these officers. All right. I will submit that I've gone over my time. Any other questions? Otherwise, we would submit. I don't want to leave here, Judge Fragerson. If you've got another concern. Well, it's all right. Well, go ahead. You're free to leave. All right. Thank you, Your Honors, for your time. I appreciate it. Thank you.
judges: Pregerson, W. Fletcher, Bybee